BREWSTER, EX'R, *v.* BREWSTER & A., EX'RS.

A, being indebted to his sister, B, in the sum of $1,500, gave her a writing, by the terms of which he promised to pay her, " during her lifetime, $90 per year, semi-annually, being the interest, at six per cent., of $1.500: the principal to be paid to her personally when she may require it, but to no other person.—This obligation will bind my heirs in case of my decease, and release them from any obligation beyond her lifetime."

A, having paid to B $45 every half year during his life, died Aug. 4, 1868. Subsequently, his executors continued to make half-yearly payments of $45 each to her, until and including July 1, 1869. On the 9th of August, 1869, in response to her written demand for the payment of the principal sum of $1,500, they paid her $393.50, and on Jan. 1, 1870, they paid her $33.20, being the interest then due upon the remainder of said principal sum. May 12, 1870, after making a further demand on that day for the balance due upon said·writing, B died. The executor of B brought an action against the executors of A to recover said balance. Their action was commenced more than three years after the grant of letters of administration to the defendants as the executors of A, and after they had settled their account as executors in the probate court, and distributed the balance of the estate found in their hands according to the will of A; but the action was commenced within two years after the original grant of administration upon the estate of B.

*Held*—1. The principal sum of $1,500 was due and owing to B whenever she might demand its payment, whether or not such payment were requisite for her comfort or convenience. 2. The cause of action survived, and was capable of prosecution by the executor of A. 3. By virtue of sec. 7, ch. 179, Gen. Stats., such an action may be sustained if brought at any time within two years after the grant of administration upon the estate of the creditor, notwithstanding more than three years have elapsed since the granting of administration upon the estate of the debtor. 4. The operation of the statute, limiting the time within which an action may be brought against an executor for a cause of action against the deceased (Gen. Stats., ch. 179, sec. 5), is suspended during the period when, administration of the estate of a deceased creditor not having been granted, there is no representative of the deceased creditor entitled to bring suit. 5. The payments made by the defendants do not amount to successive new promises, suspending the operation of the statute of limitations. Gen. Stats., ch. 179, sec. 5.

The date of a writ, and not the date of its service, indicates the time of the commencement of an action.

ASSUMPSIT, by George G. Brewster, executor of Staniel Brewster, against Lewis W. Brewster and Mary G. Brewster, executors of Chas. W. Brewster. The declaration contained a count for money had and received, and another framed specially upon the writing below set forth.

It was agreed, for the purposes of this suit, that Charles W. Brewster, in his lifetime, being indebted to his sister, Harriet Brewster, in the sum of fifteen hundred dollars, on the first day of January, A. D. 1865, gave to her a writing of that date, of which the following is a copy: "Portsmouth, N. H., Jan. 1, 1865. I hereby promise to pay Harriet Brewster, during her lifetime, ninety dollars per year, semi-annually, being the interest, at six per cent., of fifteen hundred dollars : the principal to be paid to her personally when she may require it, but to no other person.—This obligation will bind my heirs in case of my decease, and release them from any obligation beyond her lifetime.

"CHARLES W. BREWSTER."

Charles W. Brewster paid to said Harriet $45 every half year after the date of said writing, up to and including July 1, 1868. He died August 4, 1868 ; and the defendants proved his will and took letters testamentary on his estate the 8th day of September, A. D. 1868 ; and they received assets of the deceased more than sufficient to pay all his debts, including the claim of the plaintiff. The defendants paid to said Harriet $45 on the first day of January, and $45 on the first day of July, A. D. 1869. On the 9th day of August, A. D. 1869, the said Harriet made upon the defendants, as executors, a written demand for the payment of said $1,500, and on the eleventh day of the same month the defendants paid to her, and indorsed on said writing, the sum of $393.50. On the first of January, 1870, they paid her $33.20. On the 12th day of May, A. D. 1870, the said Harriet Brewster sent a notary with said writing to each of the defendants, and demanded payment of the balance of said $1,500 due thereon. Later in the same day she died ; and the plaintiff proved the will and obtained letters testamentary on her estate on the 9th day of May, A. D. 1871.

The defendants pleaded the general issue, with a brief-statement that Charles W. Brewster died the 4th of August, 1868 ; that letters of administration were granted to them the 8th of September, 1868, and that the plaintiff's action was not commenced until the 23d of September, 1871; and that, before the commencement of the plaintiff's suit, they had settled their account as executors in the probate court, and distributed the balance of the estate found in their hands, according to the will. To which the plaintiff replied, that his writ was made and dated the 23d day of August, 1871, and served on the defendants on the 28th day of September, 1871 ; and that the right of action of the said Harriet existed in her favor at the time of her decease, and survives, and that this action was commenced within two years after the original grant of administration on her estate. To this replication the defendants demurred.

The pleadings were intended to raise three questions of law :

1. Upon the foregoing facts, does this action survive, and can the executor of Harriet Brewster maintain this suit? 2. Upon the facts stated in the brief-statement, is, or is not, this action barred? 3. Upon the facts stated in the replication, is the action barred?

It was agreed that these questions of law be transferred to the law term, and that, upon their being determined, the defendants might withdraw their demurrer, and the case stand for trial by jury; or, either party might have leave to amend his pleadings;—otherwise, judgment to be rendered according to the opinion of the court.

*Hatch*, for the plaintiff.

I. The action survives. Harriet Brewster had an unquestionable right to demand, and receive, the $1,500 named in the note, at any time during her life. She twice made that demand, and thereby fixed the liability of the defendants. It was clearly wrong for them to re-fuse to pay on her demand; and they cannot be permitted to take ad-vantage of their own wrong.

II. The action is not barred by the statute: 1. The writ was ac-tually made, and intended for service within three years after adminis-tration was taken on the estate of Charles W. Brewster. *Society for Propagation of the Gospel* v. *Whitcomb*, 2 N. H. 230; *Hardy* v. *Corlis*, 21 N. H. 356. 2. The right of action existed at the decease of Har-riet Brewster, and continued two years after the original grant of ad-ministration on her estate, which time is not yet expired. Gen. Stats., ch. 179, sec. 7. 3. The payments made by the defendants amount to so many successive new promises, and take the case out of the statute. *Hall* v. *Roberts*, cited, 3 N. H. 468; *Hodgdon* v. *White*, 11 N. H. 211; *Jones* v. *Jones*, 21 N. H. 219; *Whipple* v. *Stevens*, 22 N. H. 219.

*W. H. Y. Hackett*, for the defendants.

I. The first point made by the plaintiff in his brief is, that the de-fendants cannot take advantage of their own wrong. In conceding this proposition, have I not the right to claim that the plaintiff, by adopting it, has conceded that if the defendants have committed no wrong they are not liable? He claims that H. B. twice made a demand of payment of the $1,500. My answer is,—1. That in reference to the first demand, the defendants paid all that H. B. required, and all she said she re-quired, and excused further payment, on the 11th day of August, 1869, when $393.50 was paid, and received in full for all she then required. 2. That if the second demand was made by H. B., it was when she was dying, and that she died before the defendants could reach her bed-side. 3. This second demand was made after H. B. ceased to be con-scious, and was made by the plaintiff to lay the foundation of this suit. What wrong have the defendants done?

II. I see no advantage in discussing the issue as to when the action was really commenced. The question before this court is, whether or not the facts in the brief-statement, if true, will bar this suit.

III. The payments of the defendants, who are heirs-at-law, are only recognitions *pro tanto* of their duty to make such payments, but they have no effect as new promises.

The cases cited by the plaintiff do not apply : they were all for notes or debts. This case is quite different. Here the whole, except the interest, was contingent both as to time and amount. *Non constat* that anything would be payable. To render C. W. B. or his legal representatives liable, beyond the interest, there must be an exigency which " required " money, and a notice of the amount. Payments of any part of the $1,500 were limited to H. B.'s personal requirements, to the exclusion of her legal representatives. H. B. did not intend that her executor should have any cause of action against C. W. B., or his legal representatives. She desired and agreed that all that part of the $1,500 which she did not require for her personal use should go to C. W. B. The agreement in this case was intended to be in the nature of a testamentary devise. Harriet Brewster intended to give her brother, Charles W. Brewster, the $1,500 in his hands, she retaining a life estate in the income—to $90 annually—together with the right to use so much of the principal as might be requisite, besides the income of her other property, for her comfortable support. The rest of her estate ($3,500) by will she gave to the plaintiff, another brother. The plaintiff, who has realized what was given him, now sues to recover in this suit what his sister intended to give to her brother Charles. In August, 1869, H. B. came into possession, as heir-at-law, of her distributive share of the estate of her uncle, J. G. Brewster, worth about $1,000, subject to an incumbrance, her part of which was $393.50. To meet this liability, on the 9th of August she called upon the defendants, who, on the 11th, paid her that amount, and were told that no further sum was then wanted, or was likely to be needed ; and no further sum was ever asked for until a few hours before her death, when the plaintiff caused the demand named in the case to be made by a notary. And thereupon one of the defendants went immediately to the house of H. B., and she was dead. This is not a note payable with interest on demand, but is an agreement intended to have the effect of a testamentary devise, giving C. W. B. $1,500,—reserving the right of H. B. to the income for life, with the right to use a part or the whole of the principal when she may require it for her support.

IV. My first position is, that this action does not survive and cannot be maintained by the executor of H. B. 1. Because she did not intend to reserve any right or remedy for her heirs, but excluded them ; and at the time of the death of the defendants' testator there was no unfulfilled obligation on the part of C. W. B.—all the interest was paid—and no part of the principal had been asked for. 2. Because the defendants had settled and distributed to the heirs all the estate of said C. W. B. before this action was commenced ; and the heirs had the means, and, by the terms of the agreement, were to pay what might grow due. 3. Because the said H. B.'s claim depended upon a contingency ; and as the statute, p. 365, sec. 6, provides a mode of

enforcing claims of this nature, it excludes all other forms of remedy against executors. 4. Because by the terms of this agreement no action upon it survives, unless commenced by H. B. for some default, in her lifetime ; that this agreement was for her benefit, and personal, and limited to her, and was not intended to benefit, and does not survive for the benefit of her heirs: she reserved no power to collect said $1,500 for her heirs, but only for her own requirements. Only so much of said $1,500 was payable at and when she found it necessary for her comfort, and in such sums as were requisite. " When she may require it," in the agreement, means when needed or requisite : " require " and requisite mean the same thing. The parties understood that the demand must be made in connection with a need ; and there was such a need in August, 1869, when the only demand which H. B. ever really made was answered and complied with satisfactorily. 5. All the interest due having been paid, no part of the $1,500 could have been collected by H. B. until she gave notice what sum was needed to meet her requirements. If she gave but two such notices, and the first was immediately met, and she died before the second could be answered, and commenced no suit, her executor can sustain no suit. 6. If H. B., *in extremis*, demanded payment of the balance of $1,500, or if the plaintiff caused it to be demanded in her name, not because her comfort required it, but to have it on hand for the plaintiff, or to lay the foundation of this suit, and died before the defendants could reach her, the real wish of Harriet Brewster will have been accomplished, and this action cannot be maintained.

V. This action is barred by the cause set forth in the brief statement, the will of C. W. B. was proved, and the " original " administration granted September 8, 1868, and this action was commenced, as appears from the date of the summons served in this case, September 23, 1871. But the plaintiff claims that the seventh section of the 179th chapter of the Gen. Stats. controls the fifth section of the same chapter ; or, in other words, that if Harriet Brewster had died September 1, 1871, there would have been a continuing liability of the defendants as executors to September 1, 1873, keeping the estate unsettled for five years. To this I reply, that public policy requires that estates should be settled and distributed with as little delay as consists with the reasonable protection of creditors ; and the court will hold that the seventh section is an amplification of, and not in conflict with, the fifth section, unless it shall clearly appear that it was the purpose of the law-making power, in a certain class of cases, to extend the time beyond three years from the " original grant " of administration. 1. If such had been the object of the legislature, they would have, as in other such cases, annexed the seventh section to the fifth as a proviso, and not inserted two independent and conflicting sections in the same chapter. 2. If a " right of action ", in favor of a deceased existed at the time of his death, he must have exhibited his claims to the administrator a year before the creditor's death, and then the seventh gives the unexpired portion of the two years in which to bring his

suit. In other words, he is not required to exhibit his claim to the new administrator, and the new administration is regarded as a continuation of the "original" administration. But this does not extend the time beyond three years from the "original" grant of administration. 3. The claim set up in this case was not due at the time the defendants settled their account and distributed the estate, and it also depended upon a contingency. As the sixth section provides for the protection and payment of claims of this class, by filing them in the probate court, &c., all other remedies are excluded, and that provision defeats this suit. 4. It is certain that H. B. did not intend that her executor should collect any part of the $1,500, and this action cannot be maintained unless C. W. B. at his death, or his legal representatives since, were in default. Now the only unsatisfied claim of payment ever made upon C. W. B., or his legal representatives, was made so near H. B.'s death, that she had ceased to "require" anything in this world before the defendants could reach her death-bed. Now if this demand, made in her name after she became unconscious, is held to have been properly made as "when she may require it," the defendants were then liable to pay, and this action can be sustained, only for what was "required" for her then existing or impending needs. 5. The remedy of the plaintiff, if he have any, is by bill in equity against the heirs.

FOSTER, J. The first question presented by the case is, Does Harriet Brewster's right of action survive? For the purposes of this consideration, we must take the statement which the counsel on both sides have agreed to, as presenting the real facts of the case, and not the argument of the defendant's counsel, which presents a very different state of facts. Not until such a case is agreed to, or otherwise properly presented as the defendants have commented upon, will it be necessary to consider the questions of law raised thereby.

The defendants' argument assumes that, "in reference to the first demand, the defendants paid all that Harriet Brewster required, and all that she said she required; and that she excused further payment on the 11th day of August, 1869, when $393.50 was paid and received in full for all she then required." But the case finds that the first demand was "a written demand for the payment of said $1,500;" and how it happened that no more than $393.50 was paid, in response to this demand, does not appear; but, also, it does not appear that "she excused further payment;" nor that the above sum was "paid and received in full for all she then required."

It is assumed that the second demand was made when said Harriet "was dying," "after she ceased to be conscious; that it was made by the plaintiff to lay the foundation of this suit;" and that she died before the defendants could reach her bedside to answer the demand,—which suggestions, whether important or not, are not agreed facts.

It is also suggested that "only so much of said $1,500 was payable as and when she found it necessary for her comfort, and in such

sums as were requisite." "When she may require it," say the defendants, "means when needed, or requisite; 'require' and requisite mean the same thing."

But the case finds that Charles W. Brewster, in his lifetime, *being indebted* to his sister, Harriet Brewster, in the sum of $1,500, gave her the writing which is the foundation of this suit.

By the terms of this instrument, he promises to pay her the interest semi-annually, "the principal to be paid to her when she may require it, but to no other person." The obligation binds his heirs, and also releases them from any obligation beyond her lifetime; that is, the note is not negotiable; and if she does not require its payment during her lifetime, the maker thereof and his heirs are discharged.

Bearing in mind, then, that Charles is indebted to his sister in the sum of $1,500, it would follow that she might recover it of him or his heirs during her lifetime, and, if demanded and not paid, or payment excused by her, that such demand should enure for the benefit of her heirs, and, in the absence of any suggestion of reasons for excusing the payment of this debt, or for taking it out of the ordinary course of such matters, we should not seek occasion to give such an interpretation to the instrument in suit as would prefer, among the heirs of the respective parties, the claims of the debtor to those of the creditors.

If Charles was indebted to his sister, she was entitled, with or without the written acknowledgment of indebtedness, to require payment, and to dispose of the money by leaving it to her heirs, or doing whatever else she pleased with it.

The verb "require" is not absolutely the synonym of the verb "need," though it is of the verb "demand." Crabb's Synonyms 228. Although the verb *require* may, undoubtedly, be properly used in the sense of the verb *need*, such is not its primary nor its usual signification. It comes from the Latin *requiro*, compounded of *re* and *quæro*— to seek for, or to seek to get back. It means, according to all lexicographers, and in very common parlance, to *demand;* or, as Webster defines it, to ask as of right and by authority: as King David *required* Joab to number the children of Israel. 1 Chron. xxi. 3.

The principal sum may or may not have been needed for the support of Harriet. If it were a mere gratuity, she could not demand it, at least beyond the requirement of reasonable necessity; but since it was a debt due and owing to her from Charles, she had an undoubted right to require and demand it at any time during her life, whether for her own use or to give to her heirs. Twice she made that demand, and thereby fixed the liability of the defendants, the obligation binding the heirs of Charles, whom these defendants represent.

We are, therefore, of the opinion that the cause of action survived, and that it may be enforced unless it shall be found to be barred by the statute of limitations.

The second question is, Upon the facts stated in the brief-statement, is or is not this action barred? We are constrained to answer this question negatively.

It is true, the fifth section of chapter 179 of the General Statutes provides that "no suit shall be maintained against any administrator [executor] for any cause of action against the deceased, unless the same is commenced within three years next after the original grant of administration," &c.; and that this action was not commenced, according to the allegation of the defendants in their brief-statement (which for the purposes of this inquiry we must assume to be true), until fifteen days after the expiration of three years from the original grant of administration upon the debtor's estate.   But the statute as plainly provides (sec. 7 of the same chapter) that "if any right of action existed against or in favor of the deceased at the time of [her] death, and survives, an action may be brought by or against the administrator [executor] at any time within two years after the original grant of administration."

This right of action existed in favor of the deceased at the time of her death, and it survived; and this action was brought by her executor against the executors of her debtor within two years after the original grant of administration upon her estate.

The wisdom of and the necessity for the enactment of the seventh section of the statute will become apparent upon a moment's reflection, which will also dissipate an impression, apt to be conceived upon the first glance at the chapter, that these two sections are incompatible and irreconcilable with each other.

By the fifth section, the plaintiff's testate's right of action against the defendants was limited to three years; but she had the full time of three years in which to commence such action.   Suppose she had died but a few days or weeks before the expiration of said three years, the action must be prosecuted by her executor or administrator; but before the affairs of the decedent's estate can have been investigated, and administration thereupon granted, the three years have expired, and, too late, the executor finds this demand barred by the statute of limitations, but for the suspension of that statute by force of the equitable provision of the seventh section, intended for just such an emergency, and applying, by force of its terms, to the present case, in which the emergency does not happen to exist, but where it might very probably have existed.   The statute is founded in wisdom, is universal in its application to the case of creditors or debtors deceased, and this case falls within its provisions, and is to be governed by it.

It has been decided that, as against a creditor of the deceased, the statute does not always begin to run from the death of the debtor. Lapse of time will not bar the debt, so long as the estate is unadministered and the trust subsists.   *McCandless's Estate*, 61 Pa. St. 9 ; *Shaw* v. *Kohala*, Supreme Court of Hawaii, January term, 1872.

Similar reasons and considerations must uphold the converse of this proposition, calling for the suspension of the operation of the statute during the period when, letters of administration upon the estate of the creditor having not been taken out, there is no representative of the creditor entitled to bring suit.   And such considerations, doubt-

less, led to the enactment of the seventh section of the statute referred to.

If these views are correct, it is unnecessary to consider the plaintiff's suggestions, to the effect that the case is taken out of the statute by reason of payments, made by the defendants, operating as new promises to pay the original claim.

It is elementary law that a partial payment of a note, made before a bar by limitation, is *prima facie* an acknowledgment that the residue is unpaid, and of a continuing liability therefor, and suspends the operation of the statute between the accrual of the cause of action on the note, and the date of that payment. *Jones* v. *Jones,* 21 N. H. 219 ; *Whipple* v. *Stevens,* 22 N. H. 219 ; *Hopkins* v. *Stout,* 6 Bush (Ky.) 375.

And it has been held in this State that an admission by an administrator of an existing debt of the intestate, which the administrator was liable and willing to pay, is competent and *prima facie* evidence of a new promise, and takes the claim out of the operation of the general statute of limitations, and part payment is universally recognized as such an admission. *Hale* v. *Roberts,* cited in *Buswell* v. *Roby,* 3 N. H. 468 ; *Hodgdon* v. *White,* 11 N. H. 211. See 3 Redf. on Wills 289, note. But we find no case to the effect that such a recognition of liability, either by the deceased debtor or his representatives, will avail against the statute which, for the purpose of facilitating the speedy settlement of estates, requires that an action against the administrator shall be commenced within three years after the original grant of administration ; and such a holding, it seems to us, would be contrary to the policy of the law. In this case the plaintiff had abundant time in which to begin his suit before the expiration of the three years, and we think the new promise of the defendants must be regarded merely as a promise to pay if the plaintiff's claim be enforced within the period limited by the statute.

The third question is, Upon the facts stated in the replication, is the action barred ? And the answer is, Clearly not. The replication states that the writ in this case was made and dated the 23d day of August, 1871. This was some two weeks prior to the expiration of three years after the original grant of administration upon C. W. Brewster's estate.

The date, and not the service of the writ, indicates the time when an action is commenced. *Society for Propagating the Gospel* v. *Whitcomb,* 2 N. H. 227 ; *Clindenin* v. *Allen,* 4 N. H. 385 ; *Robinson* v. *Burleigh,* 5 N. H. 225 ; *Graves* v. *Ticknor,* 6 N. H. 537 ; *Davis* v. *Dunklee,* 9 N. H. 545 ; *Hardy* v. *Corlis,* 21 N. H. 357.

The result of these considerations is, that the brief-statement sets up no defence to the plaintiff's declaration.

By the provisions of the case, new pleadings may be had : otherwise, there must be judgment for the plaintiff for the balance due upon the obligation of the defendants' testator, with interest from the 12th day of May, 1870.